**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF MONTANA**

**HELENA DIVISION**

_____

| | |
|---|---|
| DONALD EUGENE TYRREL, | CAUSE NO. CV 06-18-H-DWM-RKS |
| Petitioner, | |
| vs. | FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO DENY PETITION FOR WRIT OF HABEAS CORPUS |
| WARDEN JAMES MACDONALD, | |
| Respondent. | |

_____

This matter is currently pending on Petitioner Donald Eugene Tyrrel's petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Petitioner is challenging his 2002 conviction for sexual assault. He alleges that he was denied his constitutional right to participate in his court proceedings because he is deaf and that his counsel was ineffective. The Court has jurisdiction pursuant to 28 U.S.C. §§ 2241 and 2254.

**A. PARTIES**

Petitioner Donald Eugene Tyrrel is a state prisoner proceeding pro se. He is incarcerated at Crossroads Correctional Center.

The named Respondent is James MacDonald, Warden of the Crossroads Corrections Center and current custodian of Petitioner.

FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO DENY PETITION FOR WRIT OF HABEAS CORPUS / PAGE 1

**B.  FACTUAL AND PROCEDURAL HISTORY**[1]

On June 4, 2001, Petitioner was charged by information with two counts of sexual assault, both felonies arising from sexual contact Petitioner initiated with the young sons of Petitioner's friends who left their children in Petitioner's care on several occasions.

From birth, Petitioner has suffered from hearing loss which prevents him from hearing spoken language from a distance, or in settings where there is excessive background noise. However, Petitioner's expert audiologist testified that so long as a speaker is "close enough, has a good speaking voice, doesn't speak too fast, articulates the words correctly, [and Petitioner's] visual interpretation is good," Petitioner can hear, understand, and participate in conversation. The audiologist also confirmed that a speaker could tell from Petitioner's responses to questions, given the "complexity, the history and the context" of the communication between them, whether Petitioner accurately heard and understood what was said.

On June 28, 2001, Petitioner appeared with counsel and pled not guilty to the charges against him.  Each of the two counts carried a potential sentence of two to one hundred years imprisonment.  On August 8, 2001, the State filed a Notice of Persistent Felony Offender relating to Petitioner's prior conviction for a similar offense in Illinois.  Trial was set for September 24, 2001.  Petitioner's counsel then prepared for trial, interviewing the parties and potential witnesses, arranging travel and accommodations for out-of-town witnesses coming to testify on Petitioner's behalf, and preparing Petitioner for what to expect in the courtroom.

---

[1] The facts set forth herein have been adapted from the Montana Supreme Court's opinion in <u>Tyrrel v. State</u>, 330 Mont. 396, 126 P.3d 504, 2005 MT 246N, ¶ 20 (Mont. 2005).

On September 21, 2002, the Friday before trial, Petitioner asked counsel whether the State's plea bargain proposal was still available.  Counsel determined that it was and prepared the plea agreement which Petitioner signed that day.

On Monday, September 24, 2001, a change of plea hearing was held.  Shortly after the hearing began, Petitioner interrupted the district court because he could not hear questions asked of him.

THE COURT:  Mr. Tyrrel, I need to tell you just a few things. First off--

TYRREL:  I'm sorry, I can't hear you, sir.

COUNSEL:  May we approach?

THE COURT:  Sure.

Petitioner and his attorney then approached to "within a foot" of the bench, and the court addressed Petitioner face to face in "a loud voice."  With the exception of this initial interruption, Petitioner never again told the court or his counsel that he was unable to hear or understand the proceedings.  The hearing then continued with Petitioner responding to the court's questions.

TYRREL:  I plead guilty, your honor.

THE COURT:  Okay  . . .  Tell me why you plead guilty. What did you do?

TYRREL:  I had [sic] fondled Jacob in the penis area with me [sic] hands.

THE COURT:  How old was Jacob? ...

TYRREL:  I believe about eight years old.

THE COURT:  Your age at the time would have been--what would your age at the time have been?

TYRREL:  Forty-four.

FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO DENY PETITION FOR WRIT OF HABEAS CORPUS / PAGE 3

Before accepting his plea, the court questioned Petitioner about his understanding regarding the guilty plea he was about to enter, and regarding Petitioner's satisfaction with the performance of his defense attorney.

THE COURT:  Are you physically and mentally capable of proceeding here today?

TYRREL:  Yes, I am.

THE COURT:  Are you happy with the legal advice you've received from your attorney?

TYRREL:  Yes, I am  . . .

THE COURT:  All righty. And Mr. Tyrrel, I'm told that you are going to plead guilty here. And I want to make sure you're doing so voluntarily. So let me ask you, is anybody, whether it is your lawyer, the county attorney's office, the sheriff's office, anybody at all forcing you or pressuring you into doing this?

TYRREL:  No, there is not.

THE COURT:  It's your choice.

TYRREL:  That is right.

Petitioner then pled guilty to Count II of the information after the district court agreed to dismiss Count I and withdraw the Notice of Persistent Felony Offender on the State's motions. The district court accepted Petitioner's guilty plea, and ordered a pre-sentence investigation, including a sex offender evaluation to determine whether community treatment would be appropriate for Petitioner.  Though his sex offense evaluator found Petitioner would qualify for community treatment if he were strictly monitored, no community-based treatment programs would accept Petitioner.  Consequently, on the single remaining charge of felony sexual assault, Petitioner was sentenced on February 14, 2002, to sixty years at the Montana State Prison, with thirty years suspended.  Petitioner appealed, but later moved to dismiss his appeal.  An Order of

Dismissal was issued May 7, 2004.

On April 11, 2003, Petitioner petitioned the district court for post-conviction relief. A hearing was held on the petition on April 29, 2003, and on May 4, 2003, the district court determined that Petitioner's claims were without merit, and dismissed the petition.

The district court grounded its dismissal on the court's own conversations with Petitioner, in which the court found Petitioner's participation to be "appropriate and responsive." The district court determined that after Petitioner approached the bench, he heard and understood what was asked of him by the court and responded appropriately. The district court also relied on its own observations of counsel's representation of Petitioner, and sworn testimony by Petitioner's counsel and other witnesses who observed her performance at various stages in Petitioner's case. Each witness, including Petitioner's sex offense evaluator who was trained in working with hearing-impaired and deaf persons, had communicated extensively with Petitioner in preparing his case without the help of sign language interpreters.

The denial of Petitioner's petition was affirmed by the Montana Supreme Court on October 12, 2005. Tyrrel, 330 Mont. 396.

## C. ISSUES

In his federal habeas petition, Petitioner raises the same claims brought before the Montana Supreme Court. In his first ground for relief, he argues that he is a deaf person whose hearing is so seriously impaired that it prohibits him from understanding oral communication. He contends that no interpreter was provided at the change of plea hearing, during the sex offender evaluation, at the pre-sentence interview investigation or at sentencing. He argues this

FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO
DENY PETITION FOR WRIT OF HABEAS CORPUS / PAGE 5

denied him his right to participate in any of these proceedings.

In his second ground for relief he argues that he was denied his constitutional right to effective assistance of counsel as he would not have plead guilty but for his counsel's assurances that he would not go to prison.

## D.  PRELIMINARY CONSIDERATION

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts requires courts to examine the petition before ordering the respondent to file an answer or any other pleading.  The petition must be summarily dismissed "[i]f it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court."  Id.  "Summary dismissal is appropriate only where the allegations in the petition are 'vague [or] conclusory' or 'palpably incredible' or 'patently frivolous or false.'"  Hendricks v. Vasquez, 908 F.2d 490, 491 (9th Cir. 1990) (quoting Blackledge v. Allison, 431 U.S. 63, 75-76, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977)) (additional citations omitted).  If summary dismissal is not warranted, the judge must order the respondent to file an answer, motion, or other response or "to take other action the judge may order."  Rule 4 of the Rules Governing Section 2254 Cases.

After reviewing the transcripts of change of plea hearing, Petitioner's sentencing hearing, and the hearing on the petition for post-conviction relief as well as the district court's order on the petition for post-conviction relief, the Court finds that Mr. Tyrrel's petition should be dismissed on the merits.

## E.  LEGAL STANDARD FOR EVALUATING MERITS

Mr. Tyrrel's petition was filed after April 24, 1996, and is therefore governed by the

Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214

(AEDPA), 28 U.S.C. § 2254, Woodford v. Garceau, 538 U.S. 202, 210, 123 S.Ct. 1398, 155

L.Ed.2d 363 (2003).  AEDPA "modifies the role of federal habeas courts in reviewing" habeas

petitions.  Williams v. Taylor, 529 U.S. 362, 403 (2000)(O'Connor, J., concurring).  "The

Supreme Court has said that § 2254(d)(1) imposes a 'highly deferential standard for evaluating

state-court rulings,' and 'demands that state court decisions be given the benefit of the doubt.'"

Clark v. Murphy, 331 F.3d 1062, 1067 (9th Cir. 2003)(citing Lindh v. Murphy, 521 U.S. 320,

333 n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997) and Woodford v. Visciotti, 537 U.S. 19, 123

S.Ct 357, 360 (2002)(per curiam)).  Under AEDPA, habeas relief is proper only if the state

court's adjudication of the merits of a habeas claim "resulted in a decision that was contrary to,

or involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).[2]

"A state court's decision is 'contrary to' federal law if the state court (1) 'applies a rule

that contradicts the governing law' set forth in Supreme Court case authority or (2) applies

controlling law to a set of facts that are 'materially indistinguishable' from a Supreme Court

decision but nevertheless reaches a different result." Ortiz-Sandoval v. Clarke, 323 F.3d 1165,

---

[2]Following the AEDPA's enactment, 28 U.S.C. § 2254(d) now reads as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to
the judgment of a State court shall not be granted with respect to any claim that was
adjudicated on the merits in State court proceedings unless the adjudication of the claim –
   (1) resulted in a decision that was contrary to, or involved an unreasonable
   application of, clearly established Federal law, as determined by the Supreme
   Court of the United States; or
   (2) resulted in a decision that was based on an unreasonable determination of the
   facts in light of the evidence presented in the State court proceeding.

FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO
DENY PETITION FOR WRIT OF HABEAS CORPUS / PAGE 7

1169 (9th Cir. 2003)(citing <u>Lockyer v. Andrade</u>, 538 U.S. 63, 73 (2003)).  The United States

Supreme Court has clarified that "'clearly established Federal law' in § 2254(d)(1) 'refers to the

holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-

court decision.'" <u>Carey v. Musladin</u>, 127 S.Ct. 649, 653 (2006) (quoting <u>Williams v. Taylor</u>, 529

U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)).

 "A state court's decision is an 'unreasonable application' of federal law if it is 'objectively

unreasonable,' which 'requires the state court decision to be more than incorrect or erroneous.'

Thus, 'an unreasonable application is different from an incorrect one.'" <u>Ortiz-Sandoval</u>, 323 F.3d

at 1169-1170 (citing <u>Lockyer</u>, 538 U.S. at 75 and <u>Bell v. Cone</u>, 535 U.S. 685, 122 S.Ct. 1843,

1850 (2002)).

 With regard to factual issues, habeas relief can only be granted if the adjudication of the

claim resulted in a decision that was based on an unreasonable determination of the facts in light

of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(2).  "As to more

debatable factual determinations, the care with which the state court considered the subject may

be important."  <u>Jeffries v. Wood</u>, 114 F.3d 1484, 1500 (9th Cir. 1997)(en banc) <u>cert. denied</u> 522

U.S. 1008 (1997) <u>overruled on other grounds by Lindh</u>, 521 U.S. 320.  Further, AEDPA directs

that factual findings of the state court be granted a presumption of correctness that can only be

rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); <u>Jeffries</u>, 114 F.3d at 1499-

1500.

 Based on the foregoing statutory structure for granting habeas relief, the Court will

examine the Montana Supreme Court's decision on Petitioner's claim for relief, review the

applicable federal law, and analyze Petitioner's contentions.

**F.  EXAMINATION OF STATE COURT DECISION**

The Montana Supreme first decided that Petitioner was not a deaf person under Montana law.  They determined that the record demonstrated that Petitioner's hearing was not totally impaired, that he could speak, that he understood oral communications, that his responses to the district court's questions were appropriate in the context of the conversation, and that he understood the solemnity of the plea agreement he entered into with the state.  Other witnesses testified that they were able to communicate with Petitioner without an interpretor and Petitioner notified the Court when he had difficulty hearing.  When he did so the court and/or his counsel took appropriate steps to accommodate his hearing impairment.  Therefore, the Montana Supreme Court found that the district court did not err in determining that Petitioner's constitutional right to participate in his judicial proceedings was not infringed.

The Montana Supreme Court then analyzed Petitioner's ineffective assistance of counsel claim under the standard set forth by Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  After reviewing the record of the case, the Montana Supreme Court determined that counsel's performance was not deficient and therefore the district court correctly denied Petitioner's ineffective assistance of counsel claim.

**G.  ANALYSIS OF PETITIONER'S CONTENTIONS**

From this record, this Court cannot find "clear error" with the state court's decision and does not find that it was contrary to federal law or involved an unreasonable application of federal law.

FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO
DENY PETITION FOR WRIT OF HABEAS CORPUS / PAGE 9

1. **Lack of Interpretor**

Various federal cases have recognized a constitutional right to an interpreter but only when a language barrier interferes with a defendant's right to confrontation or his capacity, as a witness, to understand or respond to questions.  United States v. Lim, 794 F.2d 469 (9th Cir. 1986) (citing United States ex rel. Negron v. New York, 434 F.2d 386, 389 (2nd Cir. 1970); United States v. Martinez, 616 F.2d 185, 188 (5th Cir. 1980)(per curiam), cert. denied, 450 U.S. 994, 101 S.Ct. 1694, 68 L.Ed.2d 193 (1981); United States v. Carrion, 488 F.2d 12, 14 (1st Cir. 1973) (per curiam), cert. denied, 416 U.S. 907, 94 S.Ct. 1613, 40 L.Ed.2d 112 (1974)); see also Valladares v. United States, 871 F.2d 1564, 1566 (11th Cir. 1989).[3]

As a constitutional matter, a trial court must balance the defendant's rights to confrontation and effective assistance against the public's interest in the economical administration of criminal law, and the court's balancing is reversible only on a showing of abuse. United States v. Martinez, 616 F.2d 185, 188 (5th Cir.1980).

Petitioner's case is quite similar to the Ninth Circuit case of Gonzalez v. United States, 33 F.3d 1047 (9th Cir. 1994).  In Gonzalez, the Ninth Circuit found that the failure to provide an interpreter at a guilty plea hearing did not violate the defendant's Fifth and Sixth Constitutional rights because the defendant's comprehension was not sufficiently inhibited as to require an interpreter.  The Ninth Circuit considered Gonzalez's ability to answer to the district court's questioning, his need to consult with his attorney and his lack of objection to the proceedings.

---

[3]A federal defendant has a statutory right to a court-appointed interpreter under the Court Interpreters Act, 28 U.S.C. § 1827.  The majority of federal case law on this issue is based upon that statutory right as opposed to a constitutional right.

FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO DENY PETITION FOR WRIT OF HABEAS CORPUS / PAGE 10

Similarly, the Montana Supreme Court considered Petitioner's answers to the court's questions, his ability to make it known that he could not hear when necessary, and his lack of objection to the proceeding. Cf. Valladares, 871 F.2d at 1566 ("Only if the defendant makes any difficulty with the interpreter known to the court can the judge take corrective measures. To allow a defendant to remain silent throughout the trial and then, upon being found guilty, to assert a claim of inadequate translation would be an open invitation to abuse.").

The Court finds that the state court reasonably applied the correct authority to the facts. The Montana Supreme Court provided a detailed analysis regarding the entry of Petitioner's plea. As set forth above, the Court must consider the state court's factual findings and grant habeas relief if the adjudication of the claim resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2).

Both the state district court and the Montana Supreme Court made the finding that Petitioner was able to participate in his judicial proceedings. AEDPA directs that factual findings of the state court be granted a presumption of correctness that can only be rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Kesser v. Cambra, 465 F.3d 351, 380 (9th Cir. 2006)(citing Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)(as amended)). Petitioner has failed to rebut this presumption of correctness. Therefore, those findings must be presumed to be correct and his habeas petition cannot be granted on this ground.

### 2. Ineffective Assistance of Counsel

The same analysis applies to Petitioner's ineffective assistance of counsel claim. According to the petition filed in this Court, Petitioner claims he would not have plead guilty but for his counsel's assurances that he would not go to prison. Petitioner argued to the Montana Supreme Court that his counsel was ineffective because she led him to believe that if he pled guilty the district court would sentence him to house arrest, he would undergo sex offender treatment in his community, and he would not go to prison. Tyrrel, 330 Mont. 396.

The standard for analyzing an ineffective assistance of counsel claim is set forth in Strickland, 466 U.S. at 692, 694. To demonstrate ineffective assistance of counsel a petitioner must show that (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id., at 687-88. However, just showing a different result is insufficient. Strickland mandates a showing of conduct that is "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. Because both prongs of the Strickland test must be met, the court need not analyze whether counsel's performance was deficient if the petitioner fails to show actual prejudice from the alleged deficiency. Strickland, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id.

The applicable United States Supreme Court standards for effective representation with regard to a guilty plea are set forth in the Ninth Circuit's analysis of a claim similar to Petitioner's as follows:

FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO DENY PETITION FOR WRIT OF HABEAS CORPUS / PAGE 12

> Because a guilty plea is a waiver of the Fifth Amendment's protection against compulsory self-incrimination, the right to a jury trial and the right to confront one's accusers, <u>Boykin v. Alabama</u>, 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969); <u>McCarthy v. United States</u>, 394 U.S. 459, 466, 89 S.Ct. 1166, 1170-71, 22 L.Ed.2d 418 (1969), it must be a knowing, intelligent act "done with sufficient awareness of the relevant circumstances and likely consequences." <u>Brady v. United States</u>, 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970). Because "an intelligent assessment of the relative advantages of pleading guilty is frequently impossible without the assistance of an attorney," <u>id.</u> at 748 n. 6, 90 S.Ct. at 1469 n. 6, counsel have a duty to supply criminal defendants with necessary and accurate information.

<u>Iaea v. Sunn</u>, 800 F.2d 861 (9th Cir. 1986).

Under this background, the Ninth Circuit determined in <u>Iaea</u> that a defense counsel's inaccurate prediction of sentence, without more, does not constitute ineffective assistance of counsel unless there is a "gross mischaracterization of the likely outcome." <u>Id.</u> (citing <u>McMann v. Richardson</u>, 397 U.S. 759, 770, 90 S.Ct. 1441, 1448, 25 L.Ed.2d 763 (1970); <u>Wellnitz v. Page</u>, 420 F.2d 935, 936 (10th Cir.1970) (per curiam)).  In <u>Iaea</u>, counsel incorrectly informed the defendant that he could escape the possibility of minimum sentencing only if he pled guilty, that there was almost no chance of his receiving an extended or life sentence and that he had a chance to receive probation if he pled guilty.  Based upon this inaccurate information, defense counsel predicted probation but the defendant received a life sentence. <u>See id.</u> at 865.  The Ninth Circuit found that "the gross mischaracterization of the likely outcome presented in this case, combined with the erroneous advice on the possible effects of going to trial, falls below the level of competence required of defense attorneys."  <u>Id.; see also</u> <u>Chacon v. Wood</u>, 36 F.3d 1459, 1464 (9th Cir. 1994), overruled on other grounds by statute, 28 U.S.C. § 2253(c) (gross mischaracterization where an interpreter intentionally misrepresented to the defendant that he

would likely only serve three months in prison when in fact the defendant served a ten-year sentence).

The question to be answered is whether the predicted outcome grossly mischaracterized the actual (not potential) outcome.  U.S. v. Nguyen, 997 F.Supp. 1281, 1289 (C.D.Cal. 1998). Ninth Circuit precedent makes clear that any disparity between the predicted sentence and the actual sentence must be extreme.  For example, the Ninth Circuit has held that disparities of up to twenty years are not gross mischaracterizations. See, e.g., United States v. Jerome, 124 F.3d 214, 1997 WL 579099 (9th Cir. 1997) (defendant received 40 years instead of the 20 years predicted) (unpublished disposition); Doganiere v. United States, 914 F.2d 165 (9th Cir. 1990) (defendant received 15 years in prison followed by 20 years of probation instead of the 12 years predicted), cert. denied, 499 U.S. 940, 111 S.Ct. 1398, 113 L.Ed.2d 454 (1991); United States v. Garcia, 909 F.2d 1346 (9th Cir. 1990)(defendant received 19 years instead of the 8 years predicted).

The Montana Supreme Court found that the district court's finding was,

> supported by Tyrrel's own testimony, the District Court's observation of counsel's representation of Tyrrel, the extent to which counsel had prepared Tyrrel's case for trial, and sworn testimony by Tyrrel's counsel and other witnesses who observed her performance at various stages in Tyrrel's case. The record here shows that Tyrrel's counsel competently performed her duty to represent Tyrrel's interests. Counsel's performance was not deficient, and therefore Tyrrel's claim of ineffective assistance fails the first hurdle imposed by Strickland.

Tyrrel, 330 Mont. 396.

The Montana Supreme Court's decision was not an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  First, the district court judge specifically informed Petitioner of the minimum sentence and that the Court was not bound

FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO DENY PETITION FOR WRIT OF HABEAS CORPUS / PAGE 14

by the recommendations of anyone.  Specifically, the following colloquy took place:

> THE COURT: All righty.  And Mr. Tyrrel, I'm told that you are going to plead guilty here.  And I want to make sure you're doing so voluntarily.  So let me ask you, is anybody, whether it is your lawyer, the county attorney's office, the sheriff's office, anybody at all forcing you or pressuring you into doing this?
>
> THE DEFENDANT: No, there is not.
>
> THE COURT: It's your choice?
>
> THE DEFENDANT: That is right.
>
> THE COURT: All right.  Now, we have a plea bargain.  And what you need to know, I'm sure Ms. Hood has told you this, but **the bottom line is I do not have to follow the plea bargain.  I don't have to follow your lawyer's recommendation.  I don't have to follow the county attorney's recommendation.  And I don't have to follow, if we're going to do a pre-sentence investigation, I don't have to do what they suggest I do.  Do you understand that?**
>
> **THE DEFENDANT: Yes.**
>
> THE COURT: Because the punishment here on this offense, if you plead guilty, is a minimum two years in the state prison, up to 100 years in prison, and a $50,000 fine.  Do you understand that?
>
> THE DEFENDANT: Yes, I do, sir.
>
> THE COURT: Okay.  And you again realize I'm not bound by any of the recommendations made by any of these people?
>
> THE DEFENDANT: That is right.

(Document 8-2: Change of Plea Hearing, pp. 6-7) (emphasis added).

Secondly, Petitioner's counsel testified she was fully prepared to go to trial. (Document 8-3: Post-conviction hearing, Part 2, p. 80).  She explained that she was doing final preparations for trial with Petitioner on the Friday before the Monday set for trial.  She left Petitioner alone

FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO DENY PETITION FOR WRIT OF HABEAS CORPUS / PAGE 15

with his family for a few minutes while she was checking on the logistics of the witnesses who

were traveling in for the trial.  When she went into the room with Petitioner and his family,

Petitioner approached her and asked if the plea bargain was still available and that he had

committed the crime. (Document 8-3:  Post-conviction hearing, Part 2, pp. 65-66).  Ms. Hood

then spoke with the prosecutor and told Petitioner,

> And what I told him was that he would – he could plead only to the count relating
> to Jacob, not to the other count; that the persistent felony offender would be
> withdrawn; that the plea agreement could state that as long as the sex offender
> evaluation came out recommending community treatment that the State would go
> for a probationary sentence, that it would allow him to do the treatment.

(Document 8-3:  Post-conviction hearing, Part 2, pp. 66-67).

Ms. Hood testified that she would never promise a client that they would be treated in the

community because she does not have control over that.  According to Ms. Hood, the sex

offender evaluation has a lot of control over that and until she sees how an evaluation is, she

could not make that kind of guarantee to a client.  (Document 8-3:  Post-conviction hearing, Part

2, pp. 57-58).  However, she did pose the question to Ron Silvers (the sex offender evaluator)

whether an individual with a prior untreated sex offense would automatically not be eligible for

treatment in the community.  Mr. Silvers indicated that a prior conviction was not an absolute bar

to community treatment.  (Document 8-3:  Post-conviction hearing, Part 2, pp. 58-59).

Ultimately, Mr. Silvers indicated in the sex offender evaluation that Petitioner could be

treated in a community with certain structure in place. (Document 8-3:  Post-conviction hearing,

Part 2, p. 76).  However, counsel could not locate an outpatient treatment program that would

accept Petitioner.  (Document 8-3:  Post-conviction hearing, Part 2, p. 77).

FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO
DENY PETITION FOR WRIT OF HABEAS CORPUS / PAGE 16

Thus, based upon Ms. Hood's testimony it was Petitioner who approached her about the plea agreement during the midst of trial preparation. She merely presented the plea arrangement offered by the prosecution and Petitioner accepted it.

Third, Petitioner read and signed the plea agreement, which provided that the parties agreed that, "if it is recommended by the sexual offender evaluator that the Defendant receive treatment in the community, the parties agree that a suspended sentence will be recommended. The State agrees to withdraw its notice of persistent felony offender." (Document 8-4: Acknowledgment of Wavier of Rights by Plea of Guilty, p. 87, ¶ 5). The plea agreement also provided that Petitioner understood that, "on my plea of guilty alone, I could lawfully be sentenced to the maximum punishment authorized for the offense to which I plead guilty and that the court may limit my availability for parole." (Document 8-4: Acknowledgment of Wavier of Rights by Plea of Guilty, p. 87, ¶ 6).

Admittedly, there is a vast difference in the testimony of Ms. Hood and Petitioner. However, the district court made its credibility determination as follows:

> The Court also questions Defendant's credibility. As set forth previously, the Court rejects Defendant's testimony that he could not hear what was taking place in the proceedings. Furthermore, if Defendant is to be believed that he did nothing to his victim, then he lied on four separate occasions: In the plea bargain agreement he indicated that he fondled the victim's penis; he also indicated this orally to this Court; to the sex offender evaluator (Silvers); and to his probation officer when the pre-sentence investigation was being prepared.

> Finally, this Court has seen Hood perform her job over the course of 15 years. During that time, Hood has never evaded going to trial. She has always been prepared to go to trial when required to do so. This Court has never seen any indication that Hood has lied to this Court or forced a client to something the client did not want to do. In this Court's experience, Hood is particularly careful to make sure that all decisions a client makes are a result of the client's free will.

FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO DENY PETITION FOR WRIT OF HABEAS CORPUS / PAGE 17

(Document 8-4: District Court Order on Petition for Post-Conviction Relief, pp. 95).  In light of the evidence presented in the state court proceeding, this was not an unreasonable factual determination.

The United States Supreme Court has acknowledged the difficulty in making the decision to plead guilty and waive a jury trial.

> In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the facts, as he understands them, would be viewed by a court. If proved, would those facts convince a judge or jury of the defendant's guilt? . . .  Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts.

McMann, 397 U.S. 759, 769-770, 90 S.Ct. 1441, 1448 (1970).  Ms. Hood was prepared for trial, she investigated the possibility of community placement, she negotiated what would have been an extraordinary deal for Petitioner, and she adequately advised her client.  Petitioner assumed the risk that counsel's good-faith evaluation of what the court would do in this situation was mistaken.

Based upon counsel's testimony at the hearing on Mr. Tyrell's petition for post-conviction relief and the district court's credibility determination, this Court cannot say that the state court's adjudication of the claim resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(2).

## H. Certificate of Appealability

FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO DENY PETITION FOR WRIT OF HABEAS CORPUS / PAGE 18

Pursuant to 28 U.S.C. § 2253(c), as amended by the AEDPA, "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  See Hohn v. United States, 524 U.S. 236, 240 (1998); Lambright v. Stewart, 220 F.3d 1022, 1024 (9th Cir. 2000).  The "substantial showing" standard can be satisfied on an issue-by-issue basis.  Lambright, 220 F.3d at 1024 (citing 28 U.S.C. § 2253(c)(3)).

The United States Supreme Court has defined the standard of issuance for a COA as follows:

> To obtain a COA under §§ 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under Barefoot, includes showing that reasonable jurists could debate whether (or, for that matter agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'

Slack, 529 U.S. at 483-484 (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).

"The court must resolve doubts about the propriety of a COA in the petitioner's favor." Jennings v. Woodford, 290 F.3d 1006 (9th Cir. 2002) (citing Lambright, 220 F.3d at 1025).  In addition, a petitioner is not required to establish that he will prevail on the merits.  Lambright, 220 F.3d at 1025 (citing Barefoot, 463 U.S. at 893 n.4).  Rather, the COA requirement seeks only to prevent frivolous appeals from wasting judicial resources, while still affording petitioners an opportunity to show potential for merit.  Lambright, 220 F.3d at 1025.

The Ninth Circuit has described at least two examples of situations which may satisfy the Barefoot standard.  First, the standard may be met where although there is a controlling rule in the particular circuit, another circuit has reached a conflicting view.  Id. at 1025-26.  Second, a petitioner may persuasively argue that circuit law which forecloses relief should be reconsidered.

FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO DENY PETITION FOR WRIT OF HABEAS CORPUS / PAGE 19

Id.

The COA must indicate which issues satisfy the required showing.  28 U.S.C. §

2253(c)(3).  Additionally, the district judge must "state why a certificate should not issue."  Fed.

R. App. P. 22(b)(1).

Petitioner has failed to make a substantial showing that he was deprived a federal

constitutional right.  Based upon the reasoning set forth above, reasonable jurists would not

debate whether this petition should have been resolved in a different manner or that the issues

presented were 'adequate to deserve encouragement to proceed further.'  Accordingly, any

request for a certificate of appealability should be denied.

Based on the foregoing, the Court enters the following:

## RECOMMENDATION

The petition for writ of habeas corpus should be **DENIED WITH PREJUDICE** and a

Certificate of Appealability should be **DENIED**.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), Petitioner may serve and file written objections to this

Findings and Recommendations within twenty (20) days of the date entered as indicated on the

Notice of Electronic Filing.[4]  A district judge will make a de novo determination of those

portions of the Findings and Recommendations to which objection is made.  The district judge

may accept, reject, or modify, in whole or in part, the Findings and Recommendations.  Failure to

---

[4]In prisoner cases, this Court extends the time to object to twenty days in order to take into account the somewhat greater mailing time that is involved in sending documents into and out of a prison facility.

FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO DENY PETITION FOR WRIT OF HABEAS CORPUS / PAGE 20

timely file written objections may bar a de novo determination by the district judge.

**PETITIONER IS CAUTIONED THAT HE MUST KEEP THE COURT ADVISED OF ANY CHANGE OF ADDRESS AND A FAILURE TO DO SO COULD RESULT THE DISMISSAL OF THIS CAUSE OF ACTION WITHOUT NOTICE TO HIM.**

DATED this 18th day of June, 2007.

/s/ Keith Strong
Keith Strong
United States Magistrate Judge

FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO DENY PETITION FOR WRIT OF HABEAS CORPUS / PAGE 21